[Civ. No. 16098. Fourth Dist., Div. One. Mar. 26. 1979.]

BARBARA BURCH, Plaintiff and Appellant, v.
JEROLD PROD, as Acting Director, etc., Defendant and Respondent.

**COUNSEL**

Robert Burkholder, Theresa J. Player and Gregory A. Veach for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, John J. Klee, Jr., Assistant Attorney General, Anne S. Pressman and Louis Verdugo, Jr., Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**COLOGNE, Acting P. J.**—Petitioner Barbara Burch appeals after the superior court denied her petition for writ of mandate on review of a final administrative decision fixing the amount of her grant for Aid to Families with Dependent Children (AFDC) (Code Civ. Proc., § 1094.5; Welf. & Inst. Code, § 10950 et seq., § 11200 et seq.).

On October 12, 1973, Burch applied for AFDC at the San Diego County Department of Public Welfare (DPW) for herself and her child. The application was denied. At a February 1974 hearing before a referee to contest the denial of the AFDC benefits, DPW stipulated it had erroneously denied the October 12, 1973 application. At the hearing the DPW representative said: "Well, we would be willing to grant; however there would not be a full grant because we maintain that the fact that she has housing and utilities provided from her father should be considered income in kind. We are willing to conceive [*sic*] that it's a loan. . . ."

In a "Statement of Fact" adopted by the Director of the State Department of Benefit Payments (Director), the hearing referee included the following statement: ". . . Claimant does note that because she did not have any money, she became indebted to her father for the housing he provided. She also noted that she did have to borrow money to support her child and herself. . . ."

The proposed decision of the referee was to award a full aid payment of $197 per month to Burch with a stipulation the "county may not decrease this amount because of amounts loaned or received by the claimant during the period of wrongful denial as claimant required these amounts to meet the needs of her child and self."

The Director did not adopt the referee's decision and instead issued his own decision on July 31, 1974.

In the decision of the Director the issue is defined as "whether *the loans*[1] may be considered as income for purposes of grant computation." (Italics added.) The decision cites certain regulations defining what is income (MPP, §§ 44-101, 44-101.8) and what loans are not considered income or resources (MPP, § 44-111.43).[2] The decision concludes:

"Pursuant to the above-cited regulations, inasmuch as *the evidence establishes that the claimant received $127 in the form of a loan,* and said income was used to meet her current living expenses and was not otherwise exempted from consideration as income, *the county may properly consider it as income for purposes of grant computation.* Further, inasmuch as the claimant currently owes her parents $60 per month for

---

[1]The debt incurred to her parents of $60 a month for rent of a house owned by them and for utilities for Burch and her child is conceded and the Director's decision acknowledges this sum should *not* be considered "in kind income." The only "loans" in contention are those for living expenses ($127 a month) received primarily from her mother. It is not clear why these were treated differently since no distinction is made in the regulations between cash and in kind benefits.

[2]The decision notes MPP section 44-101.8 provides "that income in kind is any benefit received other than cash. It includes the value of need items provided at no charge."

The decision also recites: "MPP Section 44-101 provides that income is any benefit in cash or in kind which is, in fact, currently available to the individual or is received by her as a result of current or past labor or services. To be considered in determining the AFDC aid payment income must, in fact, be currently available to needy members of the family in meeting their needs during the budget period."

The decision notes, "MPP Section 44-111.43 provides that the following loans [among others] are not considered as income or resources:

". . . . . . . . . . . . . . . . . . .

"d. Any other grant or loan which is not available to meet current needs."

rent and utilities and said shelter was not provided free of charge, it may not be considered as income in kind.

"'. . . . . . . . . . . . . . . . . . .

"The claim is granted in part and denied in part.

"The claimant is entitled to an underpayment warrant effective November 1, 1973, because of San Diego's wrongful denial of the October 12, 1973, application for AFDC. *However, in determining the amount of the underpayment, the county may consider as income the $127 cash loan received each month* but may not consider the money owed for her rent as in kind income.

"San Diego County may consider the $127 the claimant received from October, 1973, through February, 1974, as income for purposes of eligibility and grant computation.

"In all other respects, the claim is denied." (Italics added.)

Applying a substantial evidence, not an independent judgment, standard of review, the superior court upheld the Director's order.

In the proceedings below, the Director admitted the following language contained in the petition for writ of mandamus: "Instead of adopting the referee's decision . . . [Director] issued a decision of his own . . . . [Director] found Ms. Burch to be eligible for AFDC benefits but that *the loans she received after the denial and during* the Fair Hearing *appeal period constituted income.* As a result of . . . [Director's] holding, Ms. Burch received less AFDC benefits than she was entitled to under the law." (Petition, par. IX; italics added.)

At the hearing on the petition, however, the Director characterized the funds received by Burch during the period after the October 12, 1973, application as an outright gift rather than a loan. The issue is whether the $127 per month loaned to Burch by her parents for current living expenses and made after the wrongful denial of her AFDC application was properly held to be "income" for the purpose of reducing the amount of her AFDC grant and retroactive underpayment warrant. Put another way, does any substantial evidence support the Director's conclusion the $127 monthly loan used for current expenses after the erroneous denial was "income" properly to be considered as reducing the grant?

A special rule pertains to the applicant's receipt of moneys used for subsistence during the period of time starting with the date of the wrongful denial of the application. That rule is set forth and explained in *Bd. of Soc. Welfare* v. *County of L.A.*, 27 Cal.2d 81 [162 P.2d 630], at pages 85 and 86, in the following manner:

". . . [t]he provisions for appeal to the . . . [Department of Benefit Payments (Welf. & Inst. Code, § 10054), now State Department of Social Services (Stats. 1977, ch. 1252)] and for 'the payments, if awarded, to commence from the date the applicant was first entitled thereto' [see now Welf. & Inst. Code, § 10961] likewise subserve a clear public purpose by securing to those entitled to aid the full payment thereof 'from the date . . . [they were] first entitled thereto' regardless of errors or delays by local authorities. It was the mandatory duty of the county to furnish aid according to the plan therefor which is laid down by the applicable provisions of the Welfare and Institutions Code. [Citations.] The obligation to pay became a debt due from the county to the applicant as of the date the latter was first entitled to receive the aid. [Citation.] The bare fact that an applicant has by one means or another managed to ward off starvation pending receipt of the payments to which he was previously entitled provides no sufficient excuse for a county to refuse to make such payments. To hold otherwise would, as suggested by petitioner herein, provide a money-saving device for the counties at the expense of those of our citizenry least able to bear the burden thereof.

". . . [t]he awarding of retroactive aid by the . . . [Department of Benefit Payments] implies a finding that the need existed as of the period or periods during which, according to its determination, the applicant was entitled thereto, and that such need has not yet been alleviated. If, perchance, it has been upon the bounty of friends and neighbors that the applicant has subsisted in the meantime, then (in the absence of other available resources) he is still in need of, and is entitled to, retroactive payment of his relief money in order that he may repay such advances. A contrary holding would serve to unfairly penalize those whose humanity has led them to make direct advances to the support of the applicant, even though they, in common with other citizens, had contributed through the channels of taxation to the fund from which the applicant was legally entitled to relief payments."

*Bd. of Soc. Welfare* v. *County of L.A., supra,* dealt with, among other categorical aid programs, the aid to needy children program which was a predecessor to AFDC now in effect.

■ Thus, loans made to a wrongfully denied applicant who uses the proceeds of the loans for current expenses are not to be considered as "income" for the purpose of reducing the amount of the AFDC grant and retroactive payment to the date of the wrongful denial (see also *Ramos* v. *County of Madera*, 4 Cal.3d 685, 694 [94 Cal.Rptr. 421, 484 P.2d 93]).

Finally, it must be noted there is no substantial evidence to support the Director's decision the cash Burch received was a gift. The portions of the referee's factual findings adopted by the Director spoke in terms of Burch's being "indebted" and having to "borrow" from her parents for current needs, those arising after the application denial. Even before the referee made his findings, the DPW representative conceded the amounts received were a "loan." The Director's own decision was based on the premise, repeatedly stated, the funds Burch used were "loans" and there is no question the proceeds were used for current living needs of herself and the child. Lastly, for purposes of this writ proceeding the Director admits Burch received "loans." Having concluded these were loans to Burch for current needs, and there was ample evidence to support this conclusion, the Director points to no evidence supporting a conclusion to the contrary. The fact that the loans were made on the condition they would be repaid "when and if she was able to do so" does not make them any less a legal and binding obligation to repay at some time.

It is totally inconsistent with such concessions and evidence of a loan for the Director to assert, as he did below and does here in his brief, that "loans" means "the money received by the appellant was in the form of a grant, not a repayable loan . . . ." The evidence to support a finding these funds were a gift is unsupported by the record. The record supports a finding only that this was a loan for needs incurred after the denial of Burch's application.

Under *Bd. of Soc. Welfare* v. *County of L.A., supra,* 27 Cal.2d 81, and its progeny, the AFDC benefits which were unlawfully withheld must be repaid retroactively and without reduction from the original entitlement amount due to the loans Burch received during the review period following the initial wrongful denial (see also *Ross* v. *Superior Court,* 19 Cal.3d 899, 911 [141 Cal.Rptr. 133, 569 P.2d 727]). In addition, Burch is entitled to prejudgment interest and reasonable attorney's fees (Welf. & Inst. Code, § 10962; *Tripp* v. *Swoap,* 17 Cal.3d 671, 685 [131 Cal.Rptr. 789, 552 P.2d 749]).

Judgment reversed, with directions to order AFDC benefits retroactively and award prejudgment interest and reasonable attorney's fees in accord with the views expressed in this opinion.

Staniforth, J., and Wiener, J., concurred.